CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

2010 DEC 13  PM 1: 54

DEPUTY CLERK _____

| | | |
|---|---|---|
| MACK WRIGHT and ALICE WRIGHT | § | |
| | § | CASE NO. 5:10CV0189-C |
| V. | § | |
| | § | JURY DEMANDED |
| RSM FOREX FUND, LP II; NYLE FIELD; | § | |
| RAYMOND S. MINARDI, RMGT | § | |
| INVESTMENTS II, LLC | § | |

## COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1.    Plaintiffs Mack Wright and Alice Wright (collectively the "Wrights" or "Plaintiffs") allege as follows against Defendants RSM Forex Fund, LP II ("Forex"); Nyle Field ("Field"); Raymond S. Minardi ("Minardi"); and RMGT Investments II, LLC (collectively "Defendants"), and respectfully show the Court as follows:

### PARTIES

2.    Plaintiffs Mack Wright and Alice Wright are husband and wife, and are citizens of the State of Texas, residing in Hockley County, Texas.

3.    Defendant, Raymond S. Minardi, is an individual citizen of the State of Texas, and may be served at 3928 Lost Creek Drive, Plano, Collin County, Texas 75023.

4.    Defendant, RMGT Investments II, LLC, is a Delaware limited liability company that may be served through its managing member, Raymond S. Minardi, located at its principle place of business at 3928 Lost Creek Drive, Plano, Collin County, Texas 75023.

5.    Defendant, RSM Forex Fund, LP II, is a Delaware limited partnership whose general partner is RMGT Investments II, LLC, which can be served through its managing member, Raymond S. Minardi, 3928 Lost Creek Drive, Plano, Collin County, Texas 75023.

6.     Defendant Nyle Field, is an individual citizen of the State of Texas, and may be served at 2213 92nd Street, Lubbock, Lubbock County, Texas 79423.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over the lawsuit because the action arises under federal question jurisdiction, 28 U.S.C. § 1331.  Venue is proper in this district under 28 U.S.C. §1391(b) because it is a judicial district where all Defendants reside, and is the judicial district where substantially all of the events giving rise to the claim occurred.

8.     Defendants, directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.  All of the transactions, acts, practices, and courses of business alleged herein took place in the Northern District of Texas.

## FACTUAL BACKGROUND

9.     This case involves a series of financial transactions, investments, and investment advice between Plaintiffs and Defendants.  Defendants' acts are particularly egregious because they were enjoined by a court from even engaging in the activity making the basis for this lawsuit.  The State of Texas previously filed suit against all Defendants but Nyle Field for fraudulent securities transactions in Cause No. 416-01375-2008, styled *State of Texas v. Raymond S. Minardi, Glenn A. Tucker, RSM Investments, LLC, RSM Forex Fund, LP, RMGT Investments, LLC, and RSM Forex Investments, LLC*, in the 416th District Court of Collin County, Texas (the "Forex lawsuit").  On March 2, 2009, the judge in the Forex lawsuit entered an Agreed Final Order of Permanent Injunction and Waiver of Interest ("Injunction") against Raymond S. Minardi, Glenn A. Tucker, RSM Investments, LLC, RSM Forex Fund, LP, RMGT Investments, LLC, and RSM Forex

2

Investments, LLC. Attached hereto as Exhibit "A" are true and correct copies of the Original Petition and the Injunction in the Forex lawsuit. This Injunction prohibited the enjoined parties from selling or offering to sell in Texas any security which was not registered with the Securities Commission of Texas unless otherwise permitted, acting as an investment advisor unless otherwise permitted, or engaging in fraud or fraudulent practices in connection with the offer for sale of securities. Exhibit "A," pg. 3. The Injunction defines "security" to include any limited partnership interest in a limited partnership. *Id.* at pg. 4.

10.     Despite the Injunction, the same parties, albeit under different but substantially similar names, with the addition of Nyle Field, violated the Injunction. Just a few short months after the Injunction was entered, Defendants established another scheme with another web of entities, and again began giving investment advice and committing fraudulent acts prohibited by the Injunction. Specifically, in 2009, Defendants approached Plaintiffs about investment opportunities, and offered investment advice. On December 2, 2009, Defendants induced Plaintiffs into a series of investment opportunities – (1) a $50,000.00 promissory note at eighteen percent (18%) interest, that included a promise to give Plaintiffs the opportunity to purchase or otherwise receive limited partnership interests, a true and correct copy of the note and check is attached hereto as Exhibit "B;" and (2) a $50,000.00 "note/investment," with apparently no companion loan documents, a true and correct copy of the check is attached hereto as Exhibit "C." Plaintiffs were promised that they would receive a promissory note for the secured $50,000 investment reflected in Exhibit "C" – but no promissory note was received.

11.     Both of these transactions involved checks payable to RSM Forex Fund, LP II. In both of these transactions, Defendant Field acted as a "broker" to Plaintiffs. The first check, check No. 5296, was written in the amount of $50,000.00 for the purpose of a promissory note and investment.

3

Also, in exchange for this money, the Wrights were given the opportunity to receive an interest in a limited partnership. This check and the funds are tied to the December 2, 2009 promissory note signed by Raymond S. Minardi, Manager of RMGT Investments II, LLC, the general partner of RSM Forex Fund, LP II. The promissory note carried an interest rate of eighteen percent (18%) and a maturity date of January 10, 2011. The promissory note states that "the holder of this Note may, at its option, without further notice or demand: (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable." *See* Exhibit "B", pg. 2.

12.     A second check, check No. 5297, was issued by the Wrights on December 2, 2009. *See* Exhibit "C." This check was in the amount of $50,000.00. This check evidenced that it was for the purpose of a "note and investment." Plaintiffs have no evidence of any loan documents associated with this check, other than the negotiated check. Defendants, including Defendant Field, claimed this amount was for an "investment." Defendants also represented that a promissory note would be given to Plaintiffs for this amount on the same terms as the promissory note bearing 18% interest. The promised promissory note was never delivered to Plaintiffs.

13.     These transactions by Defendants violated the Injunction. With the addition of Defendant Field, the same parties are involved in the transactions with Plaintiffs, but their entity names contain the roman numeral "II," to signify a different entity. Although the "II" entities may technically be different, they involve a virtual identity of parties and the same course of dealing prohibited by the Injunction. On December 2, 2009, only months after the Injunction was ordered, Defendants attempted to and did sell and/or issue an interest in a limited partnership, gave Plaintiffs investment advice, and induced Plaintiffs into additional investment activity, all in violation of the Injunction. Exhibit "A," pg. 3. Upon information and belief, the Texas State Securities Board (the "Board") has an open investigation targeting Defendants, and the Board has reason to believe that Defendants are

misapplying funds raised from Forex investors. As discussed below in further detail, these actions

violate not only federal law, but also Texas statutory and common law.

## COUNT 1 - VIOLATIONS OF SECTION 17(a) OF THE SECURITIES ACT

14.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by

reference each of the allegations made above as though the allegations were fully set forth herein.

15.     The Defendants, directly or indirectly, singly or in concert with others, in the offer or sale of

securities, by use of the means and instrumentalities of interstate commerce and by the use of the

mails have: (a) employed devices, schemes, and artifices to defraud; (b) obtained money or property

by means of untrue statements of a material fact and omitted to state a material fact necessary in

order to make the statements made, in light of the circumstances under which they were made, not

misleading; and (c) engaged in transactions, practices, and courses of business which operate or

would operate as a fraud and deceit upon the Plaintiffs.

16.     As a part of and in furtherance of their scheme, the Defendants, directly or indirectly,

prepared, disseminated, or used contracts, written offering documents, promotional materials,

investor and other correspondence, and oral presentations, which contained untrue statements of

material facts and misrepresentations of material facts, and which omitted to state material facts

necessary in order to make the statements made, in light of the circumstances under which they were

made, not misleading, including, but not limited to, facts as set forth in Paragraphs 1 through 13,

above.

17.     With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants

were negligent in their actions regarding the representations and omissions alleged herein. With

respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-

referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

18.     By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### COUNT 2 – FRAUD

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

19.     The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by the use of the mails have:  (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operate or would operate as a fraud and deceit upon purchasers, prospective purchasers, and any other persons, including Plaintiffs.

20.     As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated, or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to those set forth in Paragraphs 1 through 13 above.

21.     The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

22.    By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to

violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.

§ 240.10g-5].

23.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by

reference each of the allegations made above as though the allegations were fully set forth herein.

24.    Plaintiffs provided monetary investments to Defendants, at the inducement of Defendants,

in the amount of $100,000.00, under the guise of an investment opportunity and a promissory note.

All Defendants made material, false representations to Plaintiffs in negotiating the monetary

advancements – including the promissory note and alleged investment in the limited partnership.

Specifically, Defendants represented that the investments were financially sound, that the money

provided by Plaintiffs would be used for a specific investment, and that Plaintiffs would be entitled

to a specific return on their investment – eighteen percent (18%) interest on the promissory note.

25.    All Defendants made these representations knowing that the representations were false at the

time they were made. Alternatively, Defendants each made these representations without knowledge

of the truth of such statements and as positive assertions.

26.    Defendants each made said representations with the intent that Plaintiffs act on those

representations and enter into these investment relationships, loan documents, and financial

investment into the Forex limited partnership described above.

27.    Plaintiffs relied on the false representations made by Defendants in entering into these

investment relationships, loan documents, and any other financial and/or ownership interest dealing

with the Forex limited partnership.

28.    Defendants' representations each have caused foreseeable economic damages to Plaintiffs.

## COUNT 3 – BREACH OF CONTRACT

29.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

30.    Plaintiffs and Defendants entered into a valid, enforceable contract in the form of a promissory note dated December 2, 2009, as well as another agreement for investments.

31.    Plaintiffs fully and substantially performed their contractual obligations.

32.    Pursuant to the terms of the promissory note, Plaintiffs further presented the promissory note and the other agreement for investment to Defendants and accelerated payment on both by written notice to Defendants.

33.    Defendants materially, substantially, and expressly breached their contractual obligations under the promissory note and the other investment agreement by failing to use the provided funds in the Forex limited partnership for the specified investment purposes, or for any matters that benefit Plaintiffs, as promised by Defendants.

34.    The material, substantial, and express breach by Defendants has caused injury to Plaintiffs in that Plaintiffs have paid for investments that they have never received.  In addition, Defendants did not honor the language of the contract and provide immediate payment upon demand.

35.    Because of Defendants' breach of contract, Plaintiffs were forced to retain the Law Offices of Fernando M. Bustos, P.C. to bring this action and to collect on the contract.  As such, Plaintiffs request an award of reasonable attorney's fees and expenses incurred in prosecuting this breach of contract action.

## COUNT 4 – QUANTUM MERUIT

36.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

37.     Plaintiffs provided monetary advances to Defendants in the amount of $100,000.00 plus interest for the purpose of making an investment in the Forex limited partnership as well as other investment opportunities.

38.     Defendants accepted the money from Plaintiffs.  Defendants had reasonable notice that Plaintiffs expected a return on their investment – in fact, they were promised an exact rate of return on their investment.

39.     Defendants are liable to Plaintiffs under the quantum meruit theory based upon the monetary advances provided to Defendants, and Defendants' obligations to provide Plaintiffs with the promised investment opportunities.

### COUNT 5 – PROMISSORY ESTOPPEL

40.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

41.     Defendants made a promise to Plaintiffs.  Specifically, Defendants promised that they would use the funds for investment purposes in the Forex limited partnership and other promised investments and pay eighteen percent (18%) interest on Plaintiffs' investment.

42.     Plaintiffs reasonably and substantially relied on the promises to their detriment.  Plaintiffs' reliance was foreseeable by Defendants.  Injustice can be avoided only by enforcing Defendants' promises.

### COUNT 6 – CIVIL CONSPIRACY

43.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

9

44.     Defendants conspired together with the objective of defrauding Plaintiffs out of a substantial sum of money by using the Forex limited partnership and a fraudulent promissory note, among other promises, to perpetrate a fraud against Plaintiffs.

45.     Through this conspiracy, Defendants had a meeting of the minds to defraud Plaintiffs out of a substantial sum of money by inducing Plaintiffs to advance money for the Forex limited partnership and other potential investment opportunities, knowing that Forex and the other Defendants were not using those funds for the stated purpose.

46.     Defendants committed the above-described overt acts in furtherance of this conspiracy. Plaintiffs incurred foreseeable economic damages as a direct and proximate result of the fraudulent conduct that was the object of the conspiracy between all Defendants.

## COUNT 7 – FRAUDULENT INDUCEMENT

47.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

48.     Defendants, specifically including Defendant Field, made material and false representations to Plaintiffs while inducing Plaintiffs into various investments.  Defendants represented the funds would be used in a specific manner – into the Forex limited partnership with a guaranteed rate of interest return.  Based on information and belief and the ongoing investigation by the Board, the money was not used in the Forex limited partnership.  Defendants also represented an additional promissory note would be issued for Check No. 5297, Exhibit "C" herein.  No such promissory note materialized.  Finally, Defendants represented, in their investment advice, that Plaintiffs would see a specified return on their investment.  No such return on their investment has been realized.

49.     All Defendants made these representations knowing that the representations were false at the time they were made.  Alternatively, Defendants made these representations without knowledge of the truth of such statements and as positive assertions.

50.     Defendants each made said representations with the intent that Plaintiffs act on the representations and would provide money to Defendants.

51.     Plaintiffs relied on the false representations made by Defendants and such representations induced Plaintiffs into entering into the two transactions detailed above.  Plaintiffs would not have entered into the investment transactions but for the false representations and inducements made by Defendants, including Defendant Field.  Defendants' representations each have caused foreseeable economic damages to Plaintiffs.

## COUNT 8 – BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT FIELD

52.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

53.     Defendant Field owed Plaintiffs a fiduciary duty because Defendant Field served as an agent, broker, and representative of Plaintiffs in investment matters.  Defendant Field met with Plaintiffs, explained different investment opportunities with the remaining Defendants, and induced Plaintiffs into making a sizeable investment with the remaining Defendants.  Defendant Field served as a financial advisor and broker to Plaintiffs.

54.     Defendant Field violated numerous fiduciary duties in his conduct with Plaintiffs.  Because of his relationship with the other Defendants, and because Defendant Field sought to fraudulently take money away from Plaintiffs for his personal benefit and for the benefit of the other Defendants, Defendant Field breached the following duties:

        (1)     duty of loyalty and utmost good faith;

(2)    duty of candor;

(3)    duty to refrain from self-dealing;

(4)    duty to act with integrity of the strictest kind; and

(5)    duty of fair, honest dealing.

55.    Defendant Field's actions injured Plaintiffs.  But for the breaches of fiduciary duty by Defendant Field, Plaintiffs would not have entered into the fraudulent investment activities with Defendants. Defendant Field's representations, which amounted to a breach of his fiduciary duties, caused foreseeable economic damages for Plaintiffs.

## COUNT 9 – THEFT LIABILITY ACT

56.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

57.    Defendants engaged in acts that constitute an unlawful appropriation of property under Texas Penal Code § 31.03.

58.    Plaintiffs were entitled to possession of their money, various other promised investment opportunities, and an additional promissory note which they never received.  Defendants unlawfully appropriated Plaintiffs' money in violation of the Texas Penal Code §31.03.  Although Defendants had permission to use the money for investment purposes, Defendants did not have a right to keep the money, use it for purposes other than what was authorized, and not execute the complete agreement between the Plaintiffs and Defendants.

59.    Defendants' unlawful appropriation was made with the intent to deprive Plaintiffs of the property.  Defendants' wrongful conduct caused injury to Plaintiffs, which resulted in damages to the Plaintiffs.  Upon proof of actual damages, Plaintiffs are entitled to additional statutory damages

of $1,000.00 from Defendants pursuant to Texas Civil Practices & Remedies Code §134.005(a)(1).

Plaintiffs seek unliquidated damages within the jurisdictional limits of the Court.

60.     Plaintiffs' injuries resulted from Defendants' malice or actual fraud, which entitles Plaintiff

to exemplary damages under Texas Civil Practices & Remedies Code §41.004(a).

61.     Plaintiffs are entitled to the recovery of reasonable and necessary attorneys' fees under Texas

Civil Practices & Remedies Code §134.005(b).

## COUNT 10 – CONVERSION

62.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by

reference each of the allegations made above as though the allegations were fully set forth herein.

63.     Defendants converted Plaintiffs' property, wherein Plaintiffs gave Defendants two (2) checks

that were designated for a particular use.  The first check was designated for a "note," while the

second check was designated for a "note/investment."

64.     Defendants, who acquired possession of Plaintiffs' checks lawfully, wrongfully exercised

dominion and control over the property when Defendants did not invest and/or use the property for

the intended purpose.  Defendants' wrongful acts proximately caused injury to Plaintiffs, which

resulted in damages for the loss of use of the funds available in the checks.

65.     Plaintiffs seek unliquidated damages within the jurisdictional limits of the Court. Plaintiffs'

injury resulted from Defendants' malice or actual fraud, which entitles Plaintiffs to exemplary

damages under Texas Civil Practices & Remedies Code §41.003(a).

## COUNT 11 – REQUEST FOR TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTION

66.    For the following reasons and arguments, Plaintiffs respectfully request that this Court immediately enter a Temporary Restraining Order ("TRO") against Defendants, and then issue a Preliminary Injunction against Defendants for the pendency of this lawsuit.

67.    Initially, the Court should enter the temporary restraining order, as argued below, without notice to Defendants because Plaintiffs will suffer immediate and irreparable injury, loss, or damage if a TRO is not granted before Defendants can be heard, and there is no less drastic means to protect Plaintiffs' property. *See* Fed. R. Civ. P. 65(b).

68.    Plaintiffs will suffer irreparable harm if Defendants are not enjoined during the pendency of this lawsuit from liquidating, transferring, or dissipating $100,000.00, plus interest in the amount of $18,000.00, for a total of $118,000.00 in assets, and from acting in a manner inconsistent with the Injunction. *See Sampson v. Murray*, 415 U.S. 61, 88-90, 94 S.Ct. 937, 951-53 (1974).    Based on information and belief, the monies that Defendants induced from Plaintiffs, and likely other people, were not used for the stated purpose, may not even be available for accelerated collection, and Defendants should be prohibited from engaging in commercial activity inconsistent with the Injunction.

69.    There is a substantial likelihood that Plaintiffs will prevail on the merits because Defendants have already been prohibited by a Texas court from engaging in this behavior, and yet continue to do so. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2568 (1975); *DSC Comm. Corp. v. DGI Tech, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

70.    The harm faced by Plaintiffs outweighs the harm that would be sustained by the Defendants if a temporary restraining order and preliminary injunction were granted.    The Plaintiffs need their

assets protected. Plaintiffs have given Defendants a significant amount of money. Plaintiffs believe that this money may no longer be available, or will soon become unavailable with the passage of time. Furthermore, the granting of this requested injunction will simply enjoin Defendants from conducting business that they are already prohibited from conducting under the prior Injunction. As such, there is no harm to Defendants.

71.     Plaintiffs are uncertain as to the identify of Defendants' current counsel. Without an immediate *ex parte* TRO, Defendants may dissipate and waste Plaintiffs' funds.

72.     Finally, issuance of a temporary restraining order and preliminary injunction would not adversely affect public interest and public policy, because the actions taken by Defendants have already been prohibited by a Texas court. Defendants are currently being investigated by the Texas State Securities Board. In fact, the issuance of the requested injunctions would positively impact public interest and public policy with no adverse affect.

73.     Plaintiffs are willing to post a bond in the amount the Court deems appropriate. Plaintiffs ask the Court to immediately issue against Defendants a Temporary Restraining Order without notice to Defendants. Plaintiffs also request that this Court set for hearing at the earliest possible time its Motion for Preliminary Injunction and, after hearing the request, issue a preliminary injunction against Defendants for the pendency of this lawsuit.

## REQUEST FOR EXPEDITED DISCOVERY

74.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiffs re-allege and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

75.     Pursuant to Fed. R. Civ. P. 65(b), the Court must set Plaintiff's Application for Temporary Injunction for hearing within ten (10) days from entry of the Temporary Restraining Order. In order to permit recovery of Plaintiffs' misappropriated funds, as described herein, and to allow Plaintiffs

to prepare for the hearing on its Application for Temporary Injunction, expedited discovery is appropriate. Specifically, Plaintiffs request that: (a) they be permitted to take the oral depositions of Nyle Field, Raymond S. Minardi, and corporate representatives of RSM Forex Fund, LP II and RMGT Investments II, LLC on three (3) days' notice pursuant to the deposition notices *duces tecum* that Plaintiff will serve on Defendants, and (b) the Court shorten to five (5) calendar days the time that Defendants will have to respond to Plaintiffs' written discovery requests. *See* Fed. R. Civ. P. 33(b)(3); 34(b); 36(a); *United States v. A. B. Dick Co.,* 7 F.R.D. 442, 443 (N.D. Ohio 1947) (district court has discretion to shorten time for written discovery responses).

## JURY DEMAND

76.    Plaintiffs request the Court set this case for a jury trial.

## PRAYER

77.    WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS pray that Defendants be cited to appear and to answer herein. Plaintiffs further pray that a Temporary Restraining Order be issued immediately against Plaintiffs, and a Temporary Injunction be set for hearing. Plaintiffs also pray that upon final hearing, the Court enter judgment in favor of Plaintiffs against Defendants, jointly and severally, and that no award of any damage whatsoever be made in favor of Defendants. Plaintiffs further pray:

1.    For compensatory damages to be proven at trial;

2.    For exemplary or punitive damages in an amount to be proven at trial due to Defendants' fraudulent conduct;

3.    For attorneys' fees and costs of suit based on the Texas Theft Liability Act and Defendants' breach of contract;

4.    $1,000 in statutory damages under the Texas Theft Liability Act;

5.    For pre-judgment interest at the maximum rate allowed by law; and

6.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

FERNANDO M. BUSTOS
Texas Bar No. 24001819
JON OLAFSON
Texas Bar No. 2042797
LAW OFFICES OF FERNANDO M. BUSTOS, P.C.
P.O. Box 1980
Lubbock, TX  79408-1980
806-780-3976
806-780-3800 - facsimile

ATTORNEYS FOR PLAINTIFFS

STATE OF TEXAS §
§
COUNTY OF _Lubbock_ §

**VERIFICATION**

We, MACK WRIGHT and ALICE WRIGHT, Plaintiff in the above styled case, having been duly sworn, under penalty of perjury, depose and say as follows:

1.     We are over the age of eighteen (18), are mentally competent to testify in this matter, and are not disqualified from providing sworn testimony under law;

2.     We certify that the facts set forth in Paragraphs 9-13 of the above Complaint are true and correct.

SIGNED this _10th_ day of December, 2010.


_____
MACK WRIGHT


_____
ALICE WRIGHT

SWORN AND SUBSCRIBED to before me this _10th_ day of December, 2010.


_____
Notary Public, State of Texas

My Commission Expires: _07/31/2013_

JAN BUFKIN
Notary Public, State of Texas
My Commission Expires 7-21-2013

# EXHIBIT "A"

Cause No. 416-01375-2008

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| RAYMOND S. MINARDI, GLENN A. | § | |
| TUCKER, RSM INVESTMENTS, LLC, | § | |
| RSM FOREX FUND, LP, RMGT | § | COLLIN COUNTY, TEXAS |
| INVESTMENTS, LLC, AND RSM | § | |
| FOREX INVESTMENTS, LLC, | § | |
| | § | |
| Defendants | § | |
| | § | |
| and | § | |
| | § | |
| DEBBIE MINARDI, | § | |
| | § | |
| Relief Defendant | § | 416 JUDICIAL DISTRICT |

## AGREED FINAL ORDER OF
## PERMANENT INJUNCTION AND WAIVER OF INTEREST

Plaintiff, THE STATE OF TEXAS (the "*State*"), having filed its ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTIONS, RESTITUTION, DISGORGEMENT AND APPOINTMENT OF A RECEIVER (the "*Complaint*");

Defendants, RAYMOND S. MINARDI ("*Minardi*"); GLENN A. TUCKER ("*Tucker*"); RSM INVESTMENTS, LLC, a Delaware limited liability company ("*RSM Investments*"); RSM FOREX FUND, LP a Delaware limited partnership (the "*Fund*"); RMGT INVESTMENTS, LLC, a Delaware limited liability company (the "*GP*"); and RSM FOREX INVESTMENTS, LLC, a Texas limited liability company (each a "*Defendant*" and collectively, the "*Defendants*"), each having acknowledged in his/its respective Stipulation and Consent, filed herein, receipt of the Complaint filed in this matter; having admitted the in personam jurisdiction

of this Court, and the jurisdiction of this Court over the subject matter of this action; having waived the entry of Findings of Fact and Conclusions of Law under Rule 296 of the Texas Rules of Civil Procedure with respect to the entry of this *Agreed Final Order of Permanent Injunction and Waiver of Interest* ("*Agreed Order*"); having stipulated that this order complies with all of the statutory, jurisdictional and procedural requisites for entry and enforcement; having waived Texas Rules of Civil Procedure 63, and 683 through 689; having agreed, for purposes of this action only, without admitting or denying any of the allegations of the State's Complaint, except as expressly set forth herein, to the entry of this order enjoining each Defendant from engaging in transactions, acts, practices and courses of business which constitute and would constitute violations of Sections 7.A., 12.A. and 32.A. of the Texas Securities Act, as amended [Tex. Rev. Civ. Stat. art. 581-1 et seq.] (the "*Texas Securities Act*"); ordering the Defendants to waive their interest in the remaining corpus of the receivership's estate; and having waived the right to appeal the validity of this Agreed Order; and

It further appearing this Court has jurisdiction over each Defendant and the subject matter of this action; it appearing that no further notice of hearing for the entry of this Agreed Order need be given; the Court being fully advised in the premises, and no just reason for delay appearing:

## I.    ORDER OF PERMANENT INJUNCTION

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that **RAYMOND S. MINARDI**; **GLENN A. TUCKER**; **RSM INVESTMENTS, LLC**; **RSM FOREX FUND, LP**; **RMGT INVESTMENTS, LLC**; and **RSM FOREX INVESTMENTS, LLC**, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any one of the Defendants who receive actual notice of this Agreed Order by personal service or

otherwise, and each of them, be and hereby are permanently restrained, enjoined and commanded to desist and refrain from, directly or indirectly, the following acts:

1.  Selling or offering for sale in or from Texas any securities which have not been registered with the Securities Commissioner of Texas, unless such securities are exempted from registration by the Texas Securities Act or a rule or regulation promulgated thereunder;

2.  Acting as a dealer, agent, investment adviser, or investment adviser representative without having been duly registered pursuant to the Texas Securities Act, unless such acts are exempted from registration by the Texas Securities Act or the rules and regulations promulgated thereunder;

3.  Engaging in fraud or fraudulent practices in connection with the offer for sale or the sale of securities in the State of Texas, including, but not limited to: (i) the making of any misrepresentation, in any manner, of a relevant fact; (ii) the making of any promise or representation or prediction as to the future not made honestly and in good faith; (iii) the intentional failure to disclose a material fact; (iv) the gaining, directly or indirectly, through the sale of any security, of an underwriting or promotion fee or profit, selling or managing commission or profit, so gross or exorbitant as to be unconscionable; (v) the making of an offer containing a statement that is materially misleading or is otherwise likely to deceive the public; and (vi) materially aiding, with intent to deceive or defraud or with reckless disregard for the truth or the law, any person who in any way is participating in fraudulent practices.

For purposes of this Agreed Order, the following words, terms and phrases shall be given the meaning as follows:

(a) "Security" or "securities" shall include any limited partner interest in a limited partnership, share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not.

(b) "Dealer" shall include every person or company other than an agent, who engages in this State either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to or orders for, or undertaking to dispose of, or to invite offers for any security or securities and every person who deals in any other manner in any security or securities within this State. Any issuer other than a registered dealer of a security or securities, who, directly or through any person or company, other than a registered dealer, offers for

sale, sells or makes sales of its own security or securities shall be deemed a dealer; provided, however, this section or provision shall not apply to such issuer when such security or securities are offered for sale or sold either to a registered dealer or only by or through a registered dealer acting as fiscal agent for the issuer.

(c)     "Agent" shall include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or deal in any other manner, in securities within this State, whether by direct act or through subagents; provided, that the officers of a corporation or partners of a partnership shall not be deemed agents solely because of their status as officers or partners, where such corporation or partnership is registered as a securities dealer under the Texas Securities Act.

(d)     "Investment adviser" shall include a person who, for compensation, engages in the business of advising another, either directly or through publications or writings, with respect to the value of securities or to the advisability of investing in, purchasing, or selling securities or a person who, for compensation and as part of a regular business, issues or adopts analyses or a report concerning securities.

(e)     "Investment adviser representative" or "representative of an investment adviser" shall include each person or company who, for compensation, is employed, appointed, or authorized by an investment adviser to solicit clients for the investment adviser or who, on behalf of an investment

adviser, provides investment advice, directly or through subagents, to the investment adviser's clients. The term does not include a partner of a partnership or an officer of a corporation or other entity that is registered as an investment adviser under the Texas Securities Act solely because of the person's status as an officer or partner of that entity.

(f)     "Sale", "offer for sale", or "sell" shall include every disposition, or attempt to dispose of a security for value. The term "sale" means and includes contracts and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer or agreement to transfer, in trust or otherwise. Any security given, or delivered with, or as a bonus on account of any purchase of securities or other thing of value, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value. The term "sell" means any act by which a sale is made, and the term "sale" or "offer for sale" shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy, an attempt to sell, or an offer to sell, directly or by an agent, by a circular, letter, or advertisement or otherwise, including the deposit in a United States Post Office or mail box or in any manner in the United States mails within this State of a letter, circular or other advertising matter. Nothing herein shall limit or diminish the full meaning of the terms "sale," "sell" or "offer for sale" as used by or accepted in courts of law or equity. The sale of a security under conditions which entitle the purchaser or subsequent holder to exchange

the same for, or to purchase some other security, shall not be deemed to
be a sale or offer for sale of such other security; but no exchange for or
sale of such other security shall ever be made unless and until the sale
thereof shall have been first authorized in Texas under the Securities Act,
if not exempt thereunder, or by any other provisions of law.

(g)     "Issuer" shall mean and include every company or person who proposes
to issue, has issued, or shall hereafter issue any security.

No bond being required by THE STATE OF TEXAS, the Permanent Injunction in
this Agreed Order shall be effective immediately.

## II.     Waiver of Interest

Dennis L. Roossien, Jr., the Receiver appointed by this Court on June 5, 2008
(the "*Receiver*") pursuant to that certain *Temporary Restraining Order and Order
Appointing Receiver* ("TRO"), is holding the Fund's assets ("*Fund's Assets*") in custody,
pursuant to orders previously issued by the Court.

On January 2, 2009, the Receiver notified the Fund's limited partners that they
could exercise their right of redemption, pursuant to the Fund's governing documents,
for their pro-rata portion of $3,150,000.00, an amount representing substantially all of
the Fund's assets, in accordance with the Court's Order authorizing an interim
redemption.   All of the Fund's limited partners exercised their right to redeem.
Approximately $141,000.00 remain in the receivership.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Defendants and their
attorneys waive and relinquish all claims against and any interest in the corpus
remaining in the receivership's estate.

IT IS FURTHER ORDERED that $100,000 from the corpus of the receivership's estate shall be distributed to investors.  The exact allocation of such distributions to be determined by the State and the Receiver and approved by the Court.

IT IS FURTHER ORDERED that the Receiver shall be paid for his services from the remaining funds held by him, and that the Receiver shall charge his reasonable and customary rate of $250.00 per hour, plus reasonable expenses, and submit to the court and all parties of record his request for payment within 10 days of the date by which the Receiver has completed all distributions to the investors.  If no objections are filed with the court within 10 days of the filing of the request, then the Receiver shall pay himself the amount of the request, from funds he holds in the receivership estate.  If an objection is filed within 10 days, the Receiver shall (i) pay himself the undisputed portion of such request; but (ii) shall not pay himself the disputed portion of such request until a hearing has been had on the objection and a ruling has been issued. In that case, the Receiver will pay himself in accordance with the ruling.  Under no circumstances shall the Defendants be liable for any amount by which the Receiver's fees exceed the receivership's estate, after giving full effect to the $100,000 distribution required by the preceding paragraph.

IT IS FURTHER ORDERED that the parties shall, within 10 days from the date by which the Receiver has fully distributed the receivership estate in accordance herewith, submit whatever pleadings are necessary to finalize the receivership estate, which pleadings shall include a joint motion for an order dissolving the receivership and discharging the Receiver.

### III.    Dismissal of Relief Defendant

IT IS FURTHER ORDERED that relief defendant Debbie Minardi is hereby dismissed from the suit.

### IV.    Retention of Jurisdiction

IT IS ORDERED, ADJUDGED AND DECREED that this Court shall retain jurisdiction of this action for all purposes.

### V.    Binding Effect

This Agreed Order shall be binding on each Defendant and upon those persons in active concert or participation with such Defendant who receive actual notice of the Agreed Order, a copy of which may be served in person, by mail, by any officer of the State, or otherwise.

### VI.    Writs

IT IS FURTHER ORDERED that the State have all writs of execution and other process necessary to enforce this Agreed Order.

### VII.    Entry of Order

There being no just reason for delay, the Clerk of this Court is hereby directed to enter this Agreed Order pursuant to Rule 301 of the Texas Rules of Civil Procedure.


SIGNED this the ___2___ day of March 2009, at _9:15_ o'clock _A_.m.

_____
JUDGE PRESIDING

**AGREED TO AND APPROVED
AS TO FORM AND SUBSTANCE:**

OFFICE OF THE ATTORNEY GENERAL

_____
KARA L. KENNEDY
Assistant Attorney General
State Bar No. 00797454
JOSHUA R. GODBEY
Assistant Attorney General
State Bar No. 24049996
P.O.  12548
Austin, Texas 78711-2548
**Attorneys for Plaintiff**


_____
EDUARDO S. ESPINOSA
State Bar No. 24010014
K&L GATES, LLP
2828 North Harwood Street
Suite 1800
Dallas, Texas 75201-2139
**Attorneys for Defendants**


_____
DENNIS L. ROOSSIEN, JR.
State Bar No. 00784873
JAMES M. McGEE
State Bar No. 13613220
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201-6659
Direct:  (214) 855-7515
Fax:     (214) 978-5353
**Attorneys for Court-Appointed Receiver**

**AGREED TO AND APPROVED
AS TO FORM AND SUBSTANCE:**

OFFICE OF THE ATTORNEY GENERAL

KARA L. KENNEDY
Assistant Attorney General
State Bar No. 00797454
JOSHUA R. GODBEY
Assistant Attorney General
State Bar No. 24049996
P.O. 12548
Austin, Texas 78711-2548
**Attorneys for Plaintiff**

EDUARDO S. ESPINOSA
State Bar No. 24010014
K&L GATES, LLP
2828 North Harwood Street
Suite 1800
Dallas, Texas 75201-2139
**Attorneys for Defendants**

DENNIS L. ROOSSIEN, JR.
State Bar No. 00784873
JAMES M. McGEE
State Bar No. 13613220
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201-6659
Direct:  (214) 855-7515
Fax:     (214) 978-5353
**Attorneys for Court-Appointed Receiver**

Cause No. 416-01375-2008

| | | |
|---|---|---|
| STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| RAYMOND S. MINARDI, GLENN A. | § | |
| TUCKER, RSM INVESTMENTS, LLC, | § | |
| RSM FOREX FUND, LP, RMGT | § | COLLIN COUNTY, TEXAS |
| INVESTMENTS, LLC, AND RSM | § | |
| FOREX INVESTMENTS, LLC, | § | |
| | § | |
| Defendants | § | |
| | § | |
| and | § | |
| | § | |
| DEBBIE MINARDI, | § | |
| | § | |
| Relief Defendant | § | 416th JUDICIAL DISTRICT |

---

### PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTIONS, RESTITUTION, DISGORGEMENT AND APPOINTMENT OF A RECEIVER

---

TO THE HONORABLE JUDGE OF SAID COURT:

The State of Texas, Plaintiff in the above-entitled and numbered cause, (hereinafter referred to as "State"), acting by and through Greg Abbott, Attorney General of Texas, and at the request of Denise Voigt Crawford, Securities Commissioner of Texas (hereinafter referred to as "Commissioner"), files this Original Verified Petition complaining of Raymond S. Minardi, Glenn A. Tucker, RSM Investments, LLC, RSM Forex Fund, LP, RMGT Investments, LLC, and RSM Forex Investments, LLC (hereinafter referred to collectively as "Defendants"), and makes this application for a temporary restraining order, temporary and

FILED

2008 JUN -5 AM 10: 53

NANNI KUNKLE
DISTRICT CLERK
COLLIN COUNTY TEXAS
BY_____DEPUTY

permanent injunctions, restitution, and the appointment of a receiver as to Defendants, and in support thereof would show the Court the following:

## DISCOVERY LEVEL

1.      Discovery is intended to be conducted under Level 3, as set out in Texas Rule of Civil Procedure 190.

## NATURE OF THIS ACTION

2.      This action is brought in the name of the State of Texas by the Attorney General of Texas, acting within the scope of his official duties under the authority granted him under the Constitution and Laws of Texas.  It is brought for injunctive relief, restitution, and the appointment of a receiver at the request of the Securities Commissioner, who, in making such a request, is acting within the scope of her official duties and authority under The Securities Act, TEX. REV. CIV. STAT. ANN. art. 581-1 *et seq.* (Vernon 1964 & Supp. 2007) ("Texas Securities Act").

3.      This action arises from Defendants' unlawful and fraudulent sale of securities within the State of Texas, in violation of the Texas Securities Act.

4.      The State seeks a temporary restraining order and temporary and permanent injunctive relief against Defendants pursuant to Section 32.A of the Texas Securities Act, prohibiting further unlawful sales of securities to Texas residents.

5.      Pursuant to Sections 32.B and 32.C of the Texas Securities Act, the State also seeks equitable relief, including restitution, for the investors who purchased the securities described herein and the disgorgement of economic benefits gained through the conduct described herein.

6. Pursuant to Section 25-1 of the Texas Securities Act, the State seeks the appointment of a receiver to conserve and protect the assets of the Defendants for the benefit of the defrauded investors.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under Sections 25-1 and 32 of the Texas Securities Act.

8. Venue is proper in this Court under Sections 25-1 and 32 of the Texas Securities Act.

## THE DEFENDANTS AND SERVICE OF PROCESS

9. Defendant **Raymond S. Minardi** is an individual resident of the State of Texas and may be served at **3928 Lost Creek Drive, Plano, Collin County, Texas 75023**.

10. Defendant **Glenn A. Tucker** is an individual resident of the State of Texas and may be served at **6820 Nottoway Lane, Plano, Collin County, Texas 75074**.

11. Defendant **RSM Investments, LLC** is a Delaware limited liability company which may be served through **its managing members, Raymond S. Minardi, 3928 Lost Creek Drive, Plano, Collin County, Texas 75023, or Glenn A. Tucker, 6820 Nottoway Lane, Plano, Collin County, Texas 75074**.

12. Defendant **RSM Forex Fund, LP,** is a Delaware limited partnership whose general partner is RMGT Investments, LLC. RSM Forex Fund, LP may be served through **the managing members of its general partner, Raymond S. Minardi, 3928 Lost Creek Drive, Plano, Collin County, Texas 75023, or Glenn A. Tucker, 6820 Nottoway Lane, Plano, Collin County, Texas 75074**.

13.     Defendant **RMGT Investments, LLC** is a Delaware limited liability company which may be served through **its managing members, Raymond S. Minardi, 3928 Lost Creek Drive, Plano, Collin County, Texas 75023, or Glenn A. Tucker, 6820 Nottoway Lane, Plano, Collin County, Texas 75074**.

14.     Defendant **RSM Forex Investments, LLC** is a Texas limited liability company which may be served through its **registered agent** for service of process, **Raymond S. Minardi, at 3928 Lost Creek Drive, Plano, Collin County, Texas 75023**.

15.     Relief Defendant **Debbie Minardi** is an individual resident of the State of Texas who is married to Defendant Raymond S. Minardi.  She may be served at **3928 Lost Creek Drive, Collin County, Texas 75023**.  No wrongdoing is alleged against Debbie Minardi; rather, she is named as a party to this action because she is a signatory on one or more accounts that is the subject of the relief sought herein.

## DEFENDANTS' FOREX ROBOT TRADING INVESTMENT SCHEME

16.     The Defendants have perpetrated and continue to perpetrate a scheme to defraud the investing public through false claims of exorbitant past profits achieved by a proprietary automated program for trading foreign currencies known as "Sam," the "trading robot."  The factual allegations in this petition are sworn to in the affidavit of Sara Scribner, who is an Assistant Director of the Enforcement Division of the Texas State Securities Board.  Her affidavit is attached hereto as **EXHIBIT SSB-A.**

17.     Beginning in at least September, 2007, Defendant RSM Investments, LLC, directly and through agents, began to solicit investors for its foreign currency trading program using a booklet entitled *RSM Investments, LLC Forex Robot Trading: Mastering the Foreign Exchange Spot Market One Trade at a Time*.  According to the booklet, Sam

can trade a foreign currency account 24 hours a day, six days a week without ever taking a break.  *See Exhibit SSB-A*-1 (pp. 2, 7).  The booklet represents the following to prospective investors:

      a.     Sam has been trading for several years with ONLY a handful of negative trades;

      b.     The trading program "has returned 75 - 100% each year for our clients;" and

      c.     Live trading has resulted in returns as high as 544 percent per year.

                  *Id. at p. 2*

18.     A minimum investment of $35,000 was required to participate in the program, and investments could be made with funds in individual retirement accounts. *Id. at p. 9.* Investors were given the choice of investing in power of attorney accounts or in a hedge fund. *Id.* Defendant RSM Investments, LLC charged investors an "up-front fee" ranging from five percent to ten percent of the amount invested, depending on the amount of the investment. *Id. at p. 19.* Profits earned through trading were to be split 55 percent to RSM Investments, LLC and 45 percent to the investor. *Id.*

19.     Most of the funds derived from investors in the RSM Investments, LLC program were pooled in five foreign currency trading accounts held in the name of RSM Investments, LLC at FX Direct Dealer, LLC.

20.     In late 2007, the investment program was restructured, and Defendant RSM Forex Fund, LP was incorporated.  Defendant RMGT Investments, LLC serves as the general partner of RSM Forex Fund, LP, and Defendant RSM Forex Investments, LLC serves as the investment adviser to RSM Forex Fund, LP.

21.     The primary business objective of RSM Forex Fund, LP is to seek capital growth for its clients by trading foreign currency accounts using Sam.  The RSM Forex Fund offers and sells limited partnership interests to investors who wish to participate in the fund.

22.     During late 2007 and early 2008, nearly all the investors in RSM Investments, LLC converted their investments into limited partnership interests in the RSM Forex Fund. The RSM Forex Fund also solicited and accepted funds from new investors.

23.     In many ways, the representations made in the RSM Forex Fund's private placement memorandum are similar to those made by RSM Investments, LLC: the minimum investment is $35,000; a subscription fee ranging from 5 percent to 10 percent of the amount invested (not to exceed $5000) will be assessed at the time of subscription; and trading profits are to be allocated 55 percent to the general partner and 45 percent to the limited partners. *See Exhibit SSB-A*-2.  Unlike the brochure used by RSM Investments, LLC, the private placement memorandum used by RSM Forex Fund, LP contains no specific representations regarding Sam's past performance.  Rather, it states simply that "the managing directors of the Partnership have used Sam for several years." *Id. at p. 8.*

24.     Instead, Sam's past success is touted in a "welcome packet" sent to each investor in the RSM Forex Fund.  *See Exhibit SSB-A*-3.  The welcome packet represents that "SAM, our exclusive trading software, has been trading for several years with only a HANDFUL of negative trades. Over 90% of SAM's trades are profitable which accounts for its highly successful record of returns to investors."  It also represents that "SAM has generated returns to investors in excess of 10% a month, typically over 200% per year." *Id. at p. 4.*

25.    The welcome packet also represents that the potential for trading losses is limited.  According to page 10 of the packet, "the most at risk in a trade is approximately 15% of trading account balance."  Therefore, "after an investor's investment account has accumulated more than 15% in profits, only profits are at risk in trades with the client's investment protected from loss because the maximum amount of an investment account placed in a trade is approximately 15% of the investors' account balances." *Id. at p. 10*.

26.    In fact, however, each of the Defendants' clients whose money was traded with Sam during 2005 and 2006 actually lost significant sums of money, and Defendants controlled no live trading accounts in 2007 until late June.

27.    Moreover, accounts traded with SAM have recently lost over 50 percent of their balances in a single trade.  *See Exhibit SSB-A.*

28.    Defendants continue to solicit investors for the robot trading program by means of website advertisements containing the above-described representations.  *See Exhibit SSB-A-5.*

29.    The offering materials provided to prospective investors fail to disclose that in September 2002,  Defendant Raymond S. Minardi received a discharge  in bankruptcy in case no. 02-32443 in the United States Bankruptcy Court for the Northern District of Texas.

30.    Defendants control the following bank accounts and/or foreign currency trading accounts which contain funds derived from investors in the above-described scheme.  Relief Defendant Debbie Minardi is a signatory on one or more of these accounts.

Capital One, N.A.

Account no. XXXXX83884, in the name of RSM Forex Fund, LP
Account no. XXXXX47637, in the name of RSM Investments, LLC Operating
    Account
Account no. XXXXX68686, in the name of RSM Forex Fund, LP

Account no. XXXXX12567, in the name of RSM Investments, LLC

Rosenthal Collins Group, LLC
Account no. XXX767, in the name of RSM Forex Fund, LP

## DEFENDANTS ARE OFFERING AND SELLING SECURITIES

31.     Section 4.A of the Texas Securities Act, defines the term "securities" to include any "limited partner interest in a limited partnership" and any "investment contract." The investments offered and sold by Defendant RSM Forex Fund, LP are securities in the form of limited partnership interests. The investments offered and sold by Defendant RSM Investments, LLC are securities in the form of an investment contract.

## SALE OF UNREGISTERED SECURITIES

32.     Section 7.A(1) of the Texas Securities Act prohibits the sale or offer for sale of unregistered securities as follows:

> No dealer or agent shall sell or offer for sale any securities issued after September 6, 1955, except those which shall have been registered by Notification under subsection B or by Coordination under subsection C of this Section 7 and except those which come within the classes enumerated in Section 5 or Section 6 of the Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner. . . .

33.     The securities offered for sale and sold by the Defendants have not been and are not currently registered with the Securities Commissioner, nor has a permit been granted for the sale of such securities as required by Section 7 of the Texas Securities Act. *See Exhibits SSB-A-6 thru SSB-A-9.*

## FAILURE TO REGISTER PERSONS SELLING

34.     Section 12.A of the Texas Securities Act requires that all persons selling or offering to sell securities in this State must be registered under the Act as follows:

> Except as provided in Section 5 of this Act, no person, firm, corporation or dealer shall, directly or through agents, offer for sale, sell or make a sale of any securities in

this state without first being registered as in this Act provided.  No agent shall, in behalf of any dealer, sell, offer for sale, or make sale of any securities within the state unless registered as an agent for that particular registered dealer under the provisions of this Act.

35.     During the period that the above-described securities were sold and offered for sale, Defendants were not registered as dealers or agents as required by Section 12.A of the Texas Securities Act.  *See Exhibits SSB-A-10 thru SSB-A-16 and SSB-B*

## FRAUDULENT PRACTICES IN THE SALE OF SECURITIES

36.     The use of fraud and fraudulent practices in connection with the offer for sale and sale of securities is prohibited by Section 32.A of the Texas Securities Act.  In Section 4.F of the Texas Securities Act, fraud is defined as follows:

> The term "fraud" or "fraudulent practice" shall include any misrepresentations, in any manner, of a relevant fact; any promise or representation or prediction as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact; . . . provided, that nothing herein shall limit or diminish the full meaning of the terms "fraud," "fraudulent," and "fraudulent practice" as applied or accepted in courts of law or equity.

37.     In connection with the offer for sale and sale of the above-described securities, Defendants have engaged in fraud and fraudulent practices, including, but not limited to, the following:

a.     Misrepresenting the returns earned or paid to investors, including the misrepresentation that Sam, the trading robot, has a highly successful record of returns to investors and has returned 75% - 100% per year for Defendants' clients, the said information being a relevant fact;

b.     Misrepresenting the annual returns paid to investors, including the misrepresentation that Sam, the trading robot, has generated annual

returns as high as 544 percent and that "typical" returns are over 200

percent per year; the said information being a relevant fact; and

c. Misrepresenting that no more than 15% of a trading account balance

will be at risk in any trade, the said information being a relevant fact.

38. In connection with the offer for sale and sale of the above-described securities, Defendants Raymond S. Minardi, RSM Investments, LLC, RSM Forex Fund, LP, RMGT Investments, LLC, and RSM Forex Investments, LLC, have engaged in fraud and fraudulent practices, including, but not limited to, the following:

a. Intentionally failing to disclose that multiple prior clients incurred

significant losses in accounts traded by Sam, the said information

being a material fact;

b. Intentionally failing to disclose that brochures provided to previous

investors contained false representations regarding the returns earned

by Sam;

c. Intentionally failing to disclose that Defendant Raymond S. Minardi

received a discharge in bankruptcy during 2002, the said information

being a material fact.

40. Defendants, with the intent to deceive or defraud or with reckless disregard for the truth or the law, have materially aided one another in the fraudulent practices set forth above.

## NEED FOR INJUNCTIVE RELIEF

41.    Pursuant to Section 32.A of the Texas Securities Act, the above-described conduct is a basis for an action against the Defendants to enjoin them from engaging in further acts or practices in violation of the Texas Securities Act.  The State seeks a temporary restraining order, and, subsequently, temporary and permanent injunctions.

42.    The State seeks a temporary restraining order and, subsequently, temporary and permanent injunctions restraining the Defendants from accessing or transferring funds or other property used in or derived from their fraudulent scheme.  A temporary restraining order should be issued without notice to the Defendants because they are likely to transfer, hide, or dissipate the remaining assets if given notice, resulting in immediate and irreparable harm.

## RESTITUTION AND DAMAGES

43.  Pursuant to Sections 32.B and 32.C of the Texas Securities Act, the State requests that the Court order the Defendants to make equitable relief, including restitution, to the victims of the fraudulent practices and to disgorge any economic benefit gained by the Defendants through the above-described conduct.

## REQUEST FOR A RECEIVER

44.  Pursuant to Section 25-1 of the Texas Securities Act, the State requests that the Court appoint a temporary receiver and, subsequently, a permanent receiver to conserve and protect the assets of the Defendants for the benefit of the defrauded investors

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that Defendants be cited to appear and answer and that:

1.  The Court issue a temporary restraining order without notice and hearing, directing the Defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, to refrain from engaging in fraud in connection with the sale of securities, offering or selling unregistered securities, and offering or selling securities through unregistered persons, and to refrain from accessing or transferring any funds or other property used in connection therewith or derived therefrom;

2.  The Court appoint a temporary receiver without notice and hearing to the Defendants and direct such receiver to conserve and protect the assets of the Defendants for the benefit of the defrauded investors;

3.  Upon notice and hearing, the Court issue a temporary injunction and continue the appointment of the temporary receiver;

4.  Upon final hearing, the Court:

   a.   Permanently enjoin Defendants from selling or offering for sale, in the State of Texas, any securities that have not been registered with the Texas Securities Commissioner, unless an exemption from such registration is available;

   b.   Permanently enjoin Defendants from selling or offering for sale any securities in the State of Texas, unless and until the Defendants are registered as securities dealers or agents with the Texas Securities Commissioner or an exemption from such registration is available;

   c.   Permanently enjoin Defendants from committing any fraud or fraudulent practices in connection with the sale or offer for sale of securities in the State of Texas, including:

      (i)    Misrepresenting, in any manner, a relevant fact;
      (ii)   Making any promise or representation or prediction as to the future not made honestly and in good faith;
      (iii)  Intentionally failing to disclose a material fact; or
      (iv)   Gaining, directly or indirectly, through the sale of any security, an underwriting or promotion fee or profit, selling or managing

commission or profit, so gross or exorbitant as to be unconscionable, or engaging any scheme, device or other artifice to obtain such profit, fee or commission;

d.    Order Defendants to make equitable relief, including restitution, to defrauded investors pursuant to Section 32.B of the Texas Securities Act and disgorgement pursuant to Section 32.C of the Texas Securities Act;

e.    Appoint a permanent receiver over the assets of the Defendants; and

f.    Grant such further relief, at law or in equity, to which the State of Texas may be justly entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General

KENT C. SULLIVAN
First Assistant Attorney General

DAVID MORALES
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Chief, Financial Litigation Division

KARA L. KENNEDY
Texas Bar No. 00797454
JOSHUA R. GODBEY
Texas Bar No. 24049996
Assistant Attorney General
Financial Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: 512-463-2018
Fax: 512-477-2348

## VERIFICATION

STATE OF TEXAS                          §

COUNTY OF TRAVIS                        §


BEFORE ME, the undersigned authority, on this day personally appeared Denise Voigt

Crawford, Securities Commissioner of the State of Texas, who, being by me first duly sworn,

deposed and said that she has read the allegations in the foregoing petition, and upon

information and belief, each and every fact and matter therein stated is believed to be true

and correct.


*Denise Voigt Crawford*
Securities Commissioner
State of Texas


SUBSCRIBED AND SWORN to before me, this the 4th KLK day of June, 2008.


*Margaret M. Rhea*
Notary Public in and for
The State of Texas

```
MARGARET M RHEA
Notary Public, State of Texas
My Commission Expires
May 02, 2009
NOTARY WITHOUT BOND
```

Original Petition/State of Texas v. Minardi et al./Page 14

# EXHIBIT "B"

# PROMISSORY NOTE

$50,000.00                                                   _2_ Day of _December_, 20_09_

FOR VALUE RECEIVED, on or before January 10, 2011 ("Maturity Date"), the undersigned, RSM Forex Fund LPII, a Delaware limited partnership ("Borrower"), promises to pay to the order of _Mack And Alice Wright_ ("Lender") at its offices in _Levelland_, _TX_ at _110 Bowie_      _79336_, the principal amount of Fifty Thousand Dollars ($50,000) ("Total Principal Amount"), together with interest thereon, in the amount of 18% of said Principal Amount.

In conjunction with the execution of this Promissory Note, Borrower agrees to issue to Lender a Warrant to Purchase a 2.816% Limited Partnership Interest of RSM Forex Fund L.P. II under the terms and conditions of said Warrant.

The term "Maximum Rate," as used herein, shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof and this Note provides for a fluctuating rate of interest, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Borrower from time to time as of the effective date of each change in such maximum rate. If applicable law ceases to provide for such a maximum rate of interest, the Maximum Rate shall be equal to eighteen percent (18%) per annum.

The principal of and all accrued but unpaid interest on this Note shall be due and payable, shall be due and payable on the Maturity Date.

If a payment is more than ten (10) days late, Borrower will pay a delinquency charge in an amount equal to the greater of (i) 5.0% of the amount of the delinquent payment up to the maximum amount of $250.00, or (ii) $25.00. Upon an Event of Default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, do one or both of the following: (a) increase the interest rate otherwise provided herein by three (3.00) percentage points, and (b) add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including the rate determined under "(a)" above).

Borrower may from time to time prepay all or any portion of the principal of this Note without premium or penalty. Unless otherwise agreed to in writing, or otherwise required by applicable law, payments will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid collection costs, delinquency charges and other charges; provided, however, upon delinquency or other Event of Default, Lender reserves the right to apply payments among principal, interest, delinquency charges, collection costs and other charges, at its discretion. All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Lender may from time to time determine in its sole discretion. All payments and prepayments of principal of or interest on this Note shall be made in lawful money of the United States of America in immediately available funds, at the address of Lender indicated above, or such other place as the holder of this Note shall designate in writing to

Borrower.  If any payment of principal of or interest on this Note shall become due on a day which is not a Business Day (as hereinafter defined), such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment.  As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which national banking associations are authorized to be closed.  The books and records of Lender shall be prima facie evidence of all outstanding principal of and accrued and unpaid interest on this Note.

This Note and all other documents evidencing, securing, governing, guaranteeing and/or pertaining to this Note, including but not limited to those documents described above, are hereinafter collectively referred to as the "Loan Documents."  The holder of this Note is entitled to the benefits and security provided in the Loan Documents.

Borrower agrees that upon the occurrence of any one or more of the following events of default ("Event of Default"):

(a)    failure of Borrower to pay any installment of principal of or interest on this Note or on any other indebtedness of Borrower to Lender when due; or

(b)    the bankruptcy or insolvency of, the assignment for the benefit of creditors by, or the appointment of a receiver for any of the property of, or the liquidation, termination, dissolution or death or legal incapacity of, any party liable for the payment of this Note, whether as maker, endorser, guarantor, surety or otherwise;

the holder of this Note may, at its option, without further notice or demand: (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable, (ii) refuse to advance any additional amounts under this Note, (iii) foreclose all liens securing payment hereof, (iv) pursue any and all other rights, remedies and recourses available to the holder hereof, including but not limited to any such rights, remedies or recourses under the Loan Documents, at law or in equity, or (v) pursue any combination of the foregoing.

The failure to exercise the option to accelerate the maturity of this Note or any other right, remedy or recourse available to the holder hereof upon the occurrence of an Event of Default hereunder shall not constitute a waiver of the right of the holder of this Note to exercise the same at that time or at any subsequent time with respect to such Event of Default or any other Event of Default.  The rights, remedies and recourses of the holder hereof, as provided in this Note and in any of the other Loan Documents, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefore shall arise, at the sole discretion of the holder hereof.  The acceptance by the holder hereof of any payment under this Note which is less than the payment in full of all amounts due and payable at the time of such payment shall not (i) constitute a waiver of or impair, reduce, release or extinguish any right, remedy or recourse of the holder hereof, or nullify any prior exercise of any such right, remedy or recourse, or (ii) impair, reduce, release or extinguish the obligations of any party liable under any of the Loan Documents as originally provided herein or therein.

This Note and all of the other Loan Documents are intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. If any provision hereof or of any of the other Loan Documents or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the application of such provision to any other person or circumstance nor the remainder of the instrument in which such provision is contained shall be affected thereby and shall be enforced to the greatest extent permitted by law. It is expressly stipulated and agreed to be the intent of the holder hereof to at all times comply with the usury and other applicable laws now or hereafter governing the interest payable on the indebtedness evidenced by this Note. If the applicable law is ever revised, repealed or judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with respect to the indebtedness evidenced by this Note, or if Lender's exercise of the option to accelerate the maturity of this Note, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by law, then it is the express intent of Borrower and Lender that all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note and all other indebtedness arising under or pursuant to the other Loan Documents have been paid in full, refunded to Borrower), and the provisions of this Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectable hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid, or agreed to be paid, by Borrower for the use, forbearance, detention, taking, charging, receiving or reserving of the indebtedness of Borrower to Lender under this Note or arising under or pursuant to the other Loan Documents shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to such indebtedness for so long as such indebtedness is outstanding. To the extent federal law permits Lender to contract for, charge or receive a greater amount of interest, Lender will rely on federal law instead of the Texas Finance Code for the purpose of determining the Maximum Rate. Additionally, to the maximum extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, implement any other method of computing the Maximum Rate under the Texas Finance Code or under other applicable law, by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

If this Note is placed in the hands of an attorney for collection, or is collected in whole or in part by suit or through probate, bankruptcy or other legal proceedings of any kind, Borrower agrees to pay, in addition to all other sums payable hereunder, all costs and expenses of collection, including but not limited to reasonable attorneys' fees.

Borrower and any and all endorsers and guarantors of this Note severally waive

presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration and dishonor, diligence in enforcement and indulgences of every kind and without further notice hereby agree to renewals, extensions, exchanges or releases of collateral, taking of additional collateral, indulgences or partial payments, either before or after maturity.

**THIS NOTE HAS BEEN EXECUTED UNDER, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS,**

**BORROWER:**

**RSM Forex Fund LP II**

By: Raymond S. Minardi, Manager of
RMGT Investments II, LLC, general partner
of RSM Forex Fund LP II

CITY BANK TEXAS                    IMAGE SNAPSHOT    11/04/2010    253PM                    PAGE   2

**MACK WRIGHT**
**ALICE WRIGHT**

PH. 806-894-7075
110 BOWIE
LEVELLAND, TX  79336

88-173  1113
10296434

5296

DATE _12-02-09_

PAY TO THE ORDER OF _PSm   Farex Fund LP II_   | $ _50,000.°°_

_Fifty Thousand Dollars + °°/_ ———————— DOLLARS

*City Bank*
NO. BOX 1000, LEVELLAND, TEXAS 79336-1000

MEMO _promissory note — twestmt_

_Alice Wright_

5296

Date   12/08/09  Ck#        5296   Amt      50,000.00

_For Deposit only
331 541 31646_

Date   12/08/09  Ck#        5296   Amt      50,000.00

# EXHIBIT "C"

MACK WRIGHT
ALICE WRIGHT

PH. 806-894-7075
110 BOWIE
LEVELLAND, TX  79336

88-173
1113
10298494

5297

DATE  12/02/09

PAY TO THE
ORDER OF  PSM Forex Fund LP II   | $ 50,000 00

Fifty Thousand Dollars no/   DOLLARS

City Bank
P.O. BOX 1749, LEVELLAND, TEXAS 79336-1749

MEMO  note / investment

Alice Wright

5297

Date   12/08/09  Ck#      5297   Amt      50,000.00

---

331 39174444

This Deposit only

Date   12/08/09  Ck#      5297   Amt      50,000.00

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
MACK WRIGHT and ALICE WRIGHT

**DEFENDANTS**
RSMForex Fund LP II, Nyle Field, Raymond Minardi, and RMGT Investment II, LLC

**(b)** County of Residence of First Listed Plaintiff   Lubbock
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Collin
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of Fernando M. Bustos, P.C., P.O. Box 1980, Lubbock, TX 79408-1980; (806) 780-3976

Attorneys (If Known)
Unknown   5-10CV0189-C

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Section 17(a), Securities Act [15 U.S.C. Sec. 78(b)]
Brief description of cause:
Securities Act violations, fraud, breach of contract, quantum meruit, promissory estoppel, civil conspiracy, others

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:   (See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE   12/13/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #  LU004271   AMOUNT  350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____